# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CONSOL OF KENTUCKY, INC.,**
**Employer Below, Petitioner**

**FILED**
**April 22, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 23-ICA-321**          (JCN: 2014008949)

**TERRY M. BENTLEY,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Consol of Kentucky, Inc. ("Consol") appeals the June 22, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Terry M. Bentley timely filed a response.[1] Consol did not file a reply. The issue on appeal is whether the Board erred in remanding the claim for further evaluation of the claimant's application for permanent total disability ("PTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 15, 2013, Mr. Bentley sustained injuries in the course of and resulting from his employment with Consol to his right arm when it was pinned between two pieces of mining equipment. Mr. Bentley has undergone multiple surgical procedures due to the injuries to his right forearm. On September 24, 2014, the claim administrator issued an order holding his Workers' Compensation claim compensable for post-traumatic stress disorder ("PTSD"), fracture of shaft of the radius shaft, fracture of shaft of the ulna, and crushing injury of forearm.

Mr. Bentley was evaluated by Bobby Miller, M.D., a psychiatrist, on August 5, 2015. Mr. Bentley denied any prior psychiatric diagnosis or treatment. Dr. Miller diagnosed Mr. Bentley with PTSD and opined that he had reached maximum medical improvement ("MMI"). Based upon the West Virginia Workers' Compensation Psychiatric Independent Medical Examination Guidelines, Dr. Miller opined that the claimant had a total psychiatric impairment of 13%. Dr. Miller apportioned 4% of the impairment to non-

---

[1] Consol is represented by James Heslep, Esq. Terry Bentley is represented by Donald Wandling, Esq.

work-related factors and thus, opined that the claimant had 9% psychiatric impairment related to the compensable injury.

On October 21, 2019, Mr. Bentley underwent an independent medical examination ("IME") by Bruce A. Guberman, M.D. Mr. Bentley complained of pain, stiffness, and weakness of the right upper extremity, and tenderness over the dorsal aspect of his right mid-forearm at the scar. Dr. Guberman opined that Mr. Bentley was at MMI for his compensable right arm injuries. Using the AMA *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993) ("Guides"), Dr. Guberman opined that Mr. Bentley suffered 47% whole person impairment ("WPI") related to his compensable right arm injuries.

On December 9, 2019, Prasadarao B. Mukkamala, M.D., performed an IME of Mr. Bentley. Mr. Bentley reported pain at the right shoulder, right elbow, right forearm, an inability to use his right hand, and numbness in his right hand. Dr. Mukkamala diagnosed Mr. Bentley with crush injury to the right upper extremity with fractures of the humerus, radius, and ulna. Dr. Mukkamala opined that Mr. Bentley had reached MMI. Using the *Guides*, Dr. Mukkamala found that Mr. Bentley had a total of 40% WPI related to the compensable physical injury. On December 27, 2019, the claim administrator awarded Mr. Bentley 40% PPD based on the report of Dr. Mukkamala. Mr. Bentley timely protested this order.

On March 23, 2021, David J. Jenkinson, M.D., performed an IME of Mr. Bentley. Mr. Bentley reported pain in his right forearm, right shoulder, and hand, with numbness and tingling, and diminished range of motion in his right wrist. Dr. Jenkinson found that Mr. Bentley had very minimal functioning in the right hand and that amputation could have been a reasonable consideration. Dr. Jenkinson opined that Mr. Bentley had reached MMI. Using the *Guides*, Dr. Jenkinson found that Mr. Bentley had a total of 50% WPI due to the compensable physical injury to his right shoulder, arm, wrist, and hand.

The Office of Judges ("OOJ") issued a decision dated October 18, 2021, which reversed the claim administrator's order that granted Mr. Bentley a total PPD award of 40%. The OOJ adopted Dr. Jenkinson's assessment and found that Mr. Bentley was entitled to a total PPD award of 50% from the physical injury portion of the claim. The OOJ's decision was not appealed and is final.

Mr. Bentley then submitted an application for PTD benefits on November 1, 2021. He reported that he had received 59% in prior PPD awards. After a series of actions not fully developed in the appellate record, Consol, a self-insured employer, through its claim administrator issued an order dated July 14, 2022, referring the claim for further consideration of a PTD award.

On referral, Dr. Mukkamala performed an evaluation of Mr. Bentley related to his application for a PTD award on September 30, 2022. Mr. Bentley reported pain in his right

2

arm, right forearm, and right shoulder; that he had no usage of his right hand; and numbness and tingling in the right upper extremity with loss of range of motion. In his PTD application evaluation report which closely resembled his 2019 PPD report, Dr. Mukkamala noted that the compensable conditions were unspecified sprain of the right shoulder, PTSD, fracture of the shaft of the radius, fracture of the shaft of the ulna, fracture of the humerus, and crushing injury of the forearm. Using the *Guides*, Dr. Mukkamala found that Mr. Bentley had a total of 38% WPI due to the compensable injury. Dr. Mukkamala opined that Mr. Bentley's condition showed slight improvement since his prior evaluation. Dr. Mukkamala then combined the 38% WPI with the 9% WPI related to psychiatric impairment and 1.65% WPI for a hearing loss claim,[2] which combined to a WPI of 45%. Dr. Mukkamala opined that Mr. Bentley had not met the 50% threshold for consideration of a PTD application. Dr. Mukkamala's PTD application evaluation report did not mention or otherwise engage with Dr. Jenkinson's findings and opinions rendered in his March 23, 2021, report. The claim administrator without reference to or any further attempt to follow processes set forth in West Virginia Code § 23-4-9(j) issued a one-page order denying Mr. Bentley's application for PTD benefits based solely on Dr. Mukkamala's report. Mr. Bentley protested the order.

On June 22, 2023, the Board reversed the claim administrator's order denying Mr. Bentley's PTD application based solely on the 2022 report of Dr. Mukkamala and remanded the claim with instructions to process the claim in conformity with West Virginia Code § 23-4-6 (2005). Consol now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

---

[2] No background information concerning the hearing loss PPD award is in the appellate record.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Consol contends that claim administrators have not received sufficient guidance regarding processing and adjudicating PTD benefit applications following the Insurance Commissioner's dissolution of the Permanent Total Disability Review Board ("PTDRB").[3] Without such guidance, Consol argues that it satisfied the statutory requirements of West Virginia Code § 23-4-6 (2005) concerning processing and adjudicating PTD claims, and that the Board erred when it remanded the claim. We disagree.

In order to qualify for permanent total disability benefits, a claimant must be "unable to engage in substantial gainful activity requiring skills or abilities which can be acquired or which are comparable to those of any gainful activity in which he or she has previously engaged . . ." W. Va. Code § 23-4-6(n)(2). To pursue an application for permanent total disability benefits, a claimant must have a combined sum of 50% awards in one or more PPD claims or a 35% statutory disability under West Virginia Code § 23-4-6(f). W. Va. Code § 23-4-6(n)(1).

On September 7, 2021, the Offices of the Insurance Commissioner issued Bulletin No. 21-06 dissolving the PTDRB, formerly functioning as the Interdisciplinary Examining Board ("IEB"), effective January 1, 2022.[4] Prior to this date, the Insurance Commissioner operated the PTDRB for a monetary fee, paid by self-insured employers and private carriers. The Insurance Commissioner cited the "dwindling number of [PTD] applications" as the reason for the dissolution of the PTDRB.

West Virginia Code § 23-4-6(j) expressly contemplates the dissolution of the PTDRB and provides that upon dissolution, self-insured employers like Consol are required to perform all the administrative and adjudicatory functions of the former PTDRB as a "reviewing body" and to employ or otherwise engage adequate resources, including medical professionals, to perform the functions of the PTDRB. *Id.*

Due to the lack of specificity in West Virginia Code § 23-4-6(j) regarding the operation of post-PTDRB reviewing bodies, we look to well-established canons of construction. "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." *Kanawha County Board of Education v. Hall*, 895 S.E.2d

---

[3] Consol is a self-insured employer.

[4] West Virginia Code § 23-4-6(j) refers solely to the IEB. However, we like the Insurance Commissioner will refer to the former adjudicatory body responsible for reviewing PTD applications as the PTDRB.

16, 23 (2023) (citation omitted). Our highest court has held that "[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." *Id.* "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." *Id.* Therefore, "[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms." *Id.*

In this case, the sole step taken by Consol as a reviewing body was to refer Mr. Bentley to Dr. Mukkamala. We agree with the BOR that this action is insufficient to satisfy the required functions of a "reviewing body" pursuant to West Virginia Code § 23-4-6(n)(1). First, Consol did not directly or indirectly address probative evidence in the record that, for purposes of a prior PPD claim, found Mr. Bentley had a 50% WPI as of October 18, 2021. No medical professional addressed or even acknowledged the existence of the evidence in the record. No attempt was made by Consol as a reviewing body to distinguish or otherwise find other reports and evidence in the record to be less persuasive than Dr. Mukkamala's report.[5]

Second, Consol did not undertake any effort to satisfy the requirements of providing an initial written recommendation together with reasoning to the claimant for a 30-day review as is required in West Virginia Code § 23-4-6(j)(5).

At oral argument, Consol requested that this Court provide guidance as to how post-PTDRB claims should be managed. We find that in order for reviewing bodies to carry out the same deliberative adjudicatory functions as the PTDRB, reviewing bodies must, at a minimum, engage the assistance of what was considered a quorum at the PTDRB – two physicians and one vocational rehabilitation specialist.[6] *See* W. Va. Code 23-4-6(j). The

---

[5] On October 18, 2021, the OOJ found that Dr. Jenkinson, as an orthopedic surgeon, was more persuasive than Dr. Mukkamala.

[6] The statute expressly requires a reviewing body to engage *medical professionals* (plural) and this is not satisfied by simply re-engaging a single doctor who participated in an earlier PPD claim where a virtually identical report did not prevail upon independent adjudication of the PPD matter.

Consol argues that requiring private carriers and self-insured employers to employ qualified physicians and vocational rehabilitation specialists is cost prohibitive and

statute imposes the burden of engaging these experts upon each self-insured employer confronted with a PTD claim. Upon application for PTD benefits, the claimant shall be reevaluated by the reviewing body to determine if the claimant has suffered a WPI of 50% or more from either a single occupational injury or a combination of occupational injuries (or have a 35% statutory disability award under § 23-4-6(f). *See* W. Va. Code 23-4-6(n)(1).

As a part of the reevaluation of the claimant, the reviewing body shall: (1) conduct examinations of the claimant that it finds necessary and obtain all pertinent records concerning the claimant's medical history and reports of examinations; (2) in the event that the reviewing body elects to examine a claimant, it shall prepare a report stating the tests, examinations, procedures and other observations that were made, stating the findings made by the reviewing body and the reasons for the findings, serve copies of the report on the parties, and provide an opportunity to the parties to respond; (3) state initial recommendations in writing with an explanation for each recommendation, setting forth the reasons for each in a manner that deals with all relevant matters in the record; (4) serve the initial recommendations on the parties and allow thirty days to respond in writing; and (5) review any responses from parties and issue final recommendations. *See* W. Va. Code 23-4-6(j)(1), (4)-(5).

Upon receipt of the final recommendations made by the reviewing body, the private carrier or self-insured employer will enter an appropriate order. *See* W. Va. Code 23-4-6(j)(5). If the application is granted, then the claimant shall be assessed by a vocational rehabilitation specialist pursuant to West Virginia Code § 23-4-6(n)(2).

Here, Consol failed to comply with the statute when the only action it took was to refer Mr. Bentley to Dr. Mukkamala and accept at face value Dr. Mukkamala's report. Consol, as the reviewing body, did not adequately adjudicate the claim by engaging adequate resources including medical professionals to perform the evaluative and independent deliberative functions of the PTDRB as discussed above. Consol also failed to state in writing its initial recommendations setting forth its independent, deliberative, and thorough written explanation and reasoning for each recommendation and made these initial recommendations available to the claimant prior to making a final determination. On remand, Consol shall comply with the statute and function as a reviewing body as set forth above to properly assess Mr. Bentley's eligibility for PTD benefits.

---

inefficient. Consol further expressed concern that there are a lack of available disability physicians and vocational rehabilitation specialists in West Virginia. This Court is not unsympathetic to Consol's arguments, however, "[i]t is up to the legislature and not this Court to decide whether its legislation continues to meet the purposes for which it was originally enacted. If the legislature finds that it does not, it is within its power to amend the legislation as it sees fit." *Verba v. Ghaphery*, 210 W. Va. 30, 36, 552 S.E.2d 406, 412 (2001).

Accordingly, we affirm the Board's June 22, 2023, order.


                                                                    Affirmed.


**ISSUED:** April 22, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge Michael J. Olejasz, sitting by temporary assignment

Chief Judge Thomas E. Scarr, voluntarily recused